**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| LAWRENCE R. WHEATLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:11-cv-0046-TWP-DML |
| | ) | |
| HENDRICKS COUNTY SHERIFF, | ) | |
| and DAVID R. STUMM, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This case comes before the Court on Defendants Hendricks County Sheriff and David R. Stumm's (collectively, "Defendants"), Motion for Summary Judgment (Dkt. #37).  Plaintiff, Lawrence R. Wheatley ("Mr. Wheatley") filed this action alleging false arrest and battery pursuant to 42 U.S.C. §1983.   Defendants deny these allegations and seek resolution of Mr. Wheatley's claims through the entry of summary judgment.  Because of the existence of genuine issues of material fact, Defendants' Motion for Summary Judgment (Dkt. 37) is **DENIED**.

**I.   BACKGROUND**

On December 30, 2009, Plaintiff Lawrence R. Wheatley ("Mr. Wheatley"), a 57 year old practicing attorney in Hendricks County, Indiana, entered the Hendricks County Auditor's Office to file mortgage exemptions on two parcels of land.  This was not his first dealing with the auditor's office, and, to put it charitably, Mr. Wheatley did not have a high opinion of the office.  In his response brief, Mr. Wheatley admits that he did not think the employees "were very competent or professional." (Dkt. 42 at 2).  Apparently, months before the incident in question, Mr. Wheatley and Deputy Auditor Angela Bennett ("Ms. Bennett") had a contentious telephone conversation during which she had allegedly provided him with misinformation and advised him

that the auditor's office could not find the necessary paperwork allowing for a mortgage exemption on one of his properties.  During his deposition, Mr. Wheatley lambasted the county for "raping its taxpayers" because of a "five-year period where [his] real estate taxes went up 300 percent."  He also was upset by the auditor's office tax collection practices, which he viewed as "overly aggressive."

It is evident that Mr. Wheatley arrived at the auditor's office with a chip on his shoulder. Upon entering the auditor's office, Mr. Wheatley "put [his] briefcase on top of the counter," but conceded that a witness might have viewed it as him "slamming [it] on the counter."  Mr. Wheatley claims that Ms. Bennett (the same person he had problems with on the telephone months earlier) started assisting him by peppering him with a "litany" of unnecessary questions regarding the homestead deduction.  Mr. Wheatley clarified that he was only entitled to a mortgage deduction and not a homestead deduction.  Ms. Bennett responded that she was "just here to help," which Mr. Wheatley interpreted as sarcasm.  Apparently not a fan of sarcasm, Mr. Wheatley told Ms. Bennett to "[j]ust shut up and do your job."  Without a hint of irony, Mr. Wheatley says that he made this statement because he "wasn't going to tolerate her verbally abusing me."  Mr. Wheatley also felt offended because "[y]ou work for me, not the other way around."  And, just to clarify, Mr. Wheatley told Ms. Bennett to shut up roughly 30 seconds into their interaction.

Ms. Bennett then walked across the room back to her desk and returned to the counter with another employee, Melanie Jones, by her side to offer support in dealing with Mr. Wheatley.  Specifically, Ms. Bennett felt that Mr. Wheatley was behaving in a hostile fashion and bullying her. Ms. Bennett informed Mr. Wheatley that he was only entitled to one mortgage deduction.  Mr. Wheatley responded "[t]hat's not what the statute says."  To this, Ms. Bennett

responded by stating "I know who you are" – presumably referring to their prior telephone conversation.  By this time, Ms. Bennett felt threatened and felt that Mr. Wheatley was, in her words, "making a scene," being "disruptive," and "drawing attention to himself with all the other taxpayers that were in the office", so she requested that someone call security.

Susan Van Damme, another employee at the auditor's office, called Deputy Stumm and asked him to come to the auditor's office because "we need security;" however, she did not provide Deputy Stumm with any details.  After fielding the call, Deputy Stumm ran up the stairs from the basement to the auditor's office.  Another employee, Tamela Mitchell, independently made a call inquiring whether she should call security, but learned that another employee had already done so.  Deputy Stumm – a man in his sixties who retired from the Brownsburg Police Department after 33 years of service and now works security at the Hendricks County Government Center – testified that, after running up the stairs, he stopped to catch his breath and then entered the auditor's office.

By the time Deputy Stumm showed up, everything was fairly calm and he began mediating, asking "how can we solve this problem."  Although Deputy Stumm's presence "puzzled" Mr. Wheatley, they all began discussing the dispute.  On this point, Mr. Wheatley testified that, at first, Deputy Stumm did "a pretty decent job mediating," and Mr. Wheatley did not recall anyone raising their voices.  Ultimately, Ms. Bennett and Mr. Wheatley agreed that Mr. Wheatley would sign two forms, leave copies at the auditor's office, and call back the next day after Ms. Bennett had time to consult with her boss.  According to Mr. Wheatley, one of the forms had his mortgage information already on it while the other was blank.  Mr. Wheatley felt that he needed to include his mortgage information on the second form.

On this point, Mr. Wheatley pondered "[h]ow can this government sit there and tell people to sign blank forms that, if someone is incompetent filling out, can subject them to criminal prosecution." For Mr. Wheatley, this was especially worrisome, given the auditor's office's spotty track record with handling his exemption issues. In his words, "[y]ou want me to sign a blank form and leave it with these people? I think not." Ms. Bennett did not like that Mr. Wheatley began filling out the forms, stating "you're going to sign it the way I've got it." Mr. Wheatley responded, "[d]on't worry, I'll fill it in . . . you don't have to," and picked up a pen to fill in the missing information. Fed up, Ms. Bennett snatched the sheet back from Mr. Wheatley, insisting "[y]ou're going to sign it the way I've got it or you're not going to sign it at all."

At that point, Deputy Stumm, in Mr. Wheatley's words, "went ballistic." Deputy Stumm told Mr. Wheatley that he was under arrest for disorderly conduct and he was "sick of [Wheatley's] shit," grabbed him by the sleeves of his coat, dragged him into the hallway, shoved him against a wall, put his elbows under his chin, and stated "I don't care if you're a lawyer or not, I'm going to kick your ass." Mr. Wheatley responded with eloquence, stating "I haven't exerted one iota, one glimmer of resistance; why are you acting so physically?" Mr. Wheatley was puzzled by Deputy Stumm's behavior, given that (in his view) he had "done nothing, absolutely nothing, to justify" Deputy Stumm's actions; he was merely "trying to follow what the law says I am entitled to have." Deputy Stumm, on the other hand, testified that he arrested Mr. Wheatley for disorderly conduct because he was being "loud, boisterous, unruly, and uncooperative" and "was disrupting the operations in that business." Eventually, Deputy Stumm handcuffed Mr. Wheatley, allowed him to retrieve his briefcase, and then took him to the Hendricks County Jail. After being booked into jail and fingerprinted, a process that Wheatley described as making "you feel like you're less than a human," Mr. Wheatley called his 25 year

4

old daughter to post his bond.  Roughly an hour and a half later – "an hour and a half longer than I ever thought I would be in jail," in Mr. Wheatley's words – Mr. Wheatley's daughter bailed him out using a $500.00 money order.

Although not physically injured by the incident, Mr. Wheatley was "nauseated" and in a state of disbelief at the jail, describing it as extraordinarily stressful.  In the aftermath of this incident, Mr. Wheatley experienced "cluster headaches," embarrassment, and emotional pain. The Hendricks County Prosecutor filed criminal charges of disorderly conduct, alleging that Mr. Wheatley recklessly made "unreasonable noise" and "was loud and boiterous [sic] in a public office and refused to be quiet or leave . . . and continued to do so after being asked to stop by Deputy David R. Stumm."   On February 9, 2010, a special prosecutor assigned to the case moved to dismiss the charge against Mr. Wheatley and the case was dismissed on February 19, 2010, by a Hendricks county judge. On January 10, 2011, this lawsuit ensued.  Specifically, Mr. Wheatley is pursuing four claims: (1) a federal claim for unreasonable seizure; (2) a federal claim for excessive force; (3) a state law claim for false arrest; and (4) a state law claim for battery. The federal claims are against Deputy Stumm, while the state law claims are against Deputy Stumm's employer, the Hendricks County Sheriff.  Defendants have moved for summary judgment on all claims. Additional facts are added below as needed.

## II. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007).  In ruling on a motion for summary judgment, the court reviews

"the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).  However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted).  "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted).  Finally, "neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

## III.  DISCUSSION

Mr. Wheatley has brought federal claims for unreasonable seizure and excessive force against Deputy Stumm.  He has also brought state law claims for false arrest and battery against Deputy Stumm's employer, the Hendricks County Sheriff.  Because they are governed by similar standards, the unreasonable seizure claim will be grouped with the false arrest claim, while the excessive force claim will be grouped with the battery claim.

**A.     Unreasonable Seizure and False Arrest**

Unreasonable seizure claims are governed by the Fourth Amendment. *See McNair v. Coffey*, 279 F.3d 463, 466-67 (7th Cir. 2002).  "Regardless of the defendants' motives toward the plaintiff, the existence of probable cause for arrest is an absolute bar to a Section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution." *Schertz v. Waupaca County*, 875

F.2d 578, 582 (7th Cir. 1989).  This is true for both Mr. Wheatley's federal claim and his state

law claims for false arrest and false imprisonment. *See Miller v. City of Anderson,* 777 N.E.2d

1100, 1104-1105 (Ind. Ct. App. 2002) ("if the plaintiff in a false arrest action fails to demonstrate

the absence of probable cause, or if the record as a whole reflects probable cause for the arrest,

then the plaintiff's case must fail") (citation omitted).  Police have probable cause to arrest an

individual when "the facts and circumstances within their knowledge and of which they [have]

reasonably trustworthy information [are] sufficient to warrant a prudent [person] in believing that

the [suspect] had committed or was committing an offense." *Sheik-Abdi v. McClellan*, 37 F.3d

1240, 1246 (7th Cir. 1994) (citation and internal quotations omitted).  But the fact that an

individual is not ultimately convicted of the charges "does not mean that there was not probable

cause for [the] arrest." *Kelley v. Myler*, 149 F.3d 641, 647 (7th Cir. 1998).  After all, "it's what

the police know, not whether they know the truth, that matters." *Id.* (citation and internal

quotations omitted).

Plaintiff was arrested for disorderly conduct.  Under Indiana Code § 35-45-1-3, the crime

of disorderly conduct occurs when:

> A person who recklessly, knowingly, or intentionally:
>
> . . . .
>
> (3) disrupts a <u>lawful assembly of persons</u>; commits disorderly conduct, a
> Class B misdemeanor.

Ind. Code § 35-45-1-3 (emphasis added). Indiana courts have defined "assembly" as "an

assembled group, especially of people meeting for a specific purpose." *Oliver v. State*, 789

N.E.2d 1003, 1005 (Ind. Ct. App. 2003) (citation and internal quotations omitted).

It is undisputed that Mr. Wheatley acted rudely on the day in question.  Moreover, Mr. Wheatley's behavior apparently compelled two auditor's office employees to seek out security. This, by itself, is damning evidence of a *disruption of assembled persons*.  For purposes of the present motion, however, the Court must step back and analyze what Deputy Stumm knew at the time he entered the auditor's office.  *See Driebel v. City of Milwaukee*, 298 F.3d 622, 643 (7th Cir. 2002) ("The court must consider the facts as they would have reasonably appeared to the arresting officer 'seeing what he saw, hearing what he heard' at the time of the incident.") (citation omitted).

Prior to arriving at the auditor's office, Deputy Stumm only knew that an employee wanted security to come up to the office – nothing more.  That, without more, certainly did not vest Deputy Stumm with probable cause to arrest Mr. Wheatley.  Moreover, Ms. Bennett testified that, in between the time security was called and Deputy Stumm arrived, she and Mr. Wheatley were just "standing there," and she did not recall "any kind of . . . additional confrontation or . . . any words or yelling or anything like that."  Further, upon arriving, Deputy Stumm did not immediately arrest Mr. Wheatley.  Instead, he "mediated" the dispute.  At his deposition, Deputy Stumm testified that he learned from Ms. Bennett that Mr. Wheatley "was trying to file some paperwork, she didn't know if she could file the paperwork or not until she had talked to [the auditor]."  Then, Deputy Stumm learned from Mr. Wheatley that "all he wanted to do was file his paperwork . . . and [Bennett] wasn't cooperating with him."  Initially, Deputy Stumm helped Mr. Wheatley and Ms. Bennett reach what seemed to be a solution. Finally, Mr. Wheatley testified that, while Deputy Stumm mediated, he (Mr. Wheatley) never yelled or raised his voice.

Thus, according to Mr. Wheatley's version of events (which must be credited at this stage in the litigation), the only thing Mr. Wheatley did prior to being arrested was fill out a blank form that he was instructed to sign.[1]  If this is really all that Mr. Wheatley did to get arrested, then the Court finds that Deputy Stumm did not have probable cause to arrest Mr. Wheatley. While it is undisputed that Mr. Wheatley was not a paragon of tranquility during this incident, but instead acted with some level of annoyance and frustration, if police officers arrested every person who grew annoyed or frustrated when dealing with county auditors and mortgage exemptions, jails would be full and the homes securing all of those mortgages would be empty.

The parties rely on their respective cases relating to the existence of probable cause, but the Court finds Mr. Wheatley's authority to be most on-point.  Specifically, in *Blair v. City of Evansville*, 361 F. Supp. 2d 846 (S.D. Ind. 2005), Judge McKinney rejected the argument that probable cause existed for a disorderly conduct arrest when a protestor and a police officer's verbal exchange drew a "small crowd" of people looking at the officer and the protestor.  *Id*. at 862. ("Although Welcher may have been frustrated by Blair's argument that he should be allowed to protest closer to the Centre, a reasonable officer knowing these facts would not have concluded there was probable cause to arrest Blair for disorderly conduct.").  By contrast, in Defendants' key case, *Brewer v. Ind. Alcohol & Tobacco Comm'n*, 954 N.E.2d 1023 (Ind. Ct. App. 2011), the Indiana Court of Appeals determined that probable cause existed where a bar owner was "confrontational," "approached" excise officers, and "unleashed a verbal tirade." *Id*. at 1029.  Although there is evidence supporting the possibility that Mr. Wheatley behaved in a

---

[1]  What actually occurred is disputed.  From what the Court can gather, some of the witnesses testified that Mr. Wheatley was loud and disruptive, and that he also touched Deputy Stumm before the arrest.  Mr. Wheatley denies this latter allegation, instead claiming that they merely inadvertently brushed arms at one point.

manner similar to that of the plaintiff in *Brewer*, Mr. Wheatley's own version of events paints a different a picture, one in which he behaved more calmly, respectfully, and rationally.  *See Payne v. Pauley*, 337 F.3d 767, 777 (7th Cir. 2003) ("Again, we must credit [plaintiff's] version of the facts in which she claims that she did not argue with [the officer], she did not swear at him, did not yell, and she did not goad the crowd.  Given these facts, Officer Pauley had no probable cause to arrest [plaintiff] for disorderly conduct.").

Turning to qualified immunity, it is well-established that government officials are entitled to qualified immunity that shields them from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  For the right to be *clearly established*, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (citation and internal quotations omitted), *receded from by Pearson v. Callahan*, 555 U.S. 223 (2009).  Under Seventh Circuit precedent, a violation is "clearly established" where: (1) a closely analogous case establishes that the conduct is unconstitutional; or (2) the violation is so obvious that a reasonable state actor would know that his actions violated the Constitution. *Siebert v. Severino*, 256 F.3d 648, 654-55 (7th Cir. 2001) (citation omitted).

*If Mr. Wheatley's exact version of events is credited*, then the violation of Mr. Wheatley's rights was obvious because no reasonable officer could have concluded that Mr. Wheatley was engaged in disorderly conduct when he began filling out a form that he was told to just sign.  *See Payne*, 337 at 778 (officer not entitled to qualified immunity under plaintiff's version of events because "no reasonable officer could have concluded that she was obstructing a police officer or engaged in disorderly conduct").  Due to factual disputes, Deputy Stumm is not entitled to

qualified immunity at this time.  With respect to Mr. Wheatley's state law claim for false arrest asserted against Deputy Stumm's employer, the Hendricks County Sheriff, the Indiana Supreme Court has held that this claim parallels its Fourth Amendment counterpart, also hinging on the existence of probable cause. *See Row v. Holt*, 864 N.E.2d 1011, 1013 (Ind. 2007) ("Probable cause for purposes of civil liability for an arrest by a law enforcement officer [under Indiana law] is governed by the same standard imposed by the Fourth Amendment with respect to unlawful seizures and is evaluated in light of the information and circumstances available to the arresting officer at the time of the arrest.").  It necessarily follows that the Court must, for the same reasons, deny summary judgment on this claim.

**B.      Excessive Force and Battery**

The constitutionality of police officer's use of force under the Fourth Amendment is determined by whether the officer's actions were "objectively reasonable" in light of the facts and circumstances they faced at the time, without the benefit of 20/20 hindsight. *Graham v. Connor*, 490 U.S. 386, 396 (1989).  This calculus considers "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Id*. The Seventh Circuit has held that a police officer's use of force is unconstitutional if, "judging from the totality of circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest." *Lester v. City of Chicago*, 830 F.2d 706, 713 (7th Cir. 1987). "The inquiry is fact specific and balances the intrusion on the individual against the governmental interests at stake." *Payne*, 337 F.3d at 778.

It is well-settled that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . . violates the Fourth Amendment."  *Graham*, 490 U.S. at 396

11

(citation and internal quotations omitted).   And, as Defendants emphasize, mere bumps and bruises do not often give rise to viable excessive force claims.  *See, e.g., Sow v. Fortville Police Dept.*, 636 F.3d 293, 304 (7th Cir. 2011) (officer didn't use excessive force by placing handcuffs on plaintiff too tightly or by pushing plaintiff into a police car, causing him to bump his head); *Tibbs v. City of Chicago*, 469 F.3d 661, 666 (7th Cir. 2006) (no excessive force as a matter of law even though plaintiff "likely suffered some discomfort and pain from handcuffs that [the police officer] applied somewhat too tightly"); *but see Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 471 n.3, 475-77 (7th Cir. 1997) (noting that "an excessive force claim does not require an injury" and finding that plaintiff stated excessive force claim where officer administered "one violent poke and push").

But Defendants' cases are distinguishable in one important respect.   In those cases, the officer had probable cause to make the arrest in the first place.   Here, by contrast, the Court has ruled that genuine issues of material fact exist regarding the existence of probable cause.   This means that, under Mr. Wheatley's version of events, his seizure was improper.   When probable cause is lacking, then presumably "almost any amount force [is] impermissible." *Durkin v. Brzneziak*, 1993 WL 524790, at *5 (N.D. Ill. Dec. 14, 1993).   On this point, other circuits have noted that where officers had no legitimate basis for the arrest of the subject, any use of force to effectuate the arrest was excessive.   *See, e.g., Reese v. Herbert*, 527 F.3d 1253, 1273 (11th Cir. 2008) ("In the absence of probable cause, [the officer] was not justified in using any force against the [plaintiff]."); *Gaddis v. Redford Twp.*, 364 F.3d 763, 772 (6th Cir. 2004) ("even minor uses of force are unconstitutionally excessive if they are totally gratuitous") (citation and internal quotations omitted).

12

Neither the parties nor the Court unearthed a Seventh Circuit case speaking directly to this issue.  Although, it is worth noting that the Seventh Circuit has stated that "police officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever." *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996).  In any event, to some degree, this issue leads the Court into a conceptual challenge.  If probable cause is lacking in a case, does it inescapably follow that the subsequent arrest *automatically* amounts to excessive force?  The answer, it seems, has to be "probably not."  If, for instance, an officer (without probable cause) arrested a suspect by politely asking him to step into the backseat of his police car that was full of a soft bed of velvety pillows, and the suspect complied, then it would be absurd to say that the officer used *excessive force*.  Such reasoning would conflate an unreasonable seizure claim with an excessive force claim, when the two are analytically distinct.

Fortunately, the Court need not wade any deeper or circumscribe any boundaries on this issue.  According to Mr. Wheatley, Deputy Stumm told him that he was "sick of [Wheatley's] shit," grabbed him by the sleeves of his coat, dragged him into the hallway, shoved him against a wall, put his elbows under his chin, stated "I don't care if you're a lawyer or not, I'm going to kick your ass," and then arrested him for disorderly conduct. The Court finds that if, in fact, Deputy Stumm did not have probable cause to make this arrest, then his conduct was excessive. Moreover, Deputy Stumm is not entitled to qualified immunity because, under Mr. Wheatley's version of events, it would have been "obvious" that such conduct was excessive.  *See Siebert*, 256 F.3d at 654-55.

This same basic reasoning applies with equal force to the battery claim filed against the Hendricks County Sheriff since "Indiana's excessive force standard effectively parallels the Fourth Amendment standard discussed above."  *Bowden v. Town of Speedway*, 539 F. Supp. 2d

13

1092, 1100 (S.D. Ind. 2008).  Because of the same factual disputes that bar summary judgment

on the excessive force claim, summary judgment must also be denied on the battery claim.

## IV.   CONCLUSION

It remains unclear if a jury will credit Mr. Wheatley's version of the facts.  But that is not

for the Court to decide.  Because Mr. Wheatley's version of events creates genuine issues of

material fact, Defendants' Motion for Summary Judgment (Dkt. #37) must be **DENIED**.


SO ORDERED.


Date: 05/18/2012
_____


Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana


DISTRIBUTION:

Jaunae M. Hanger
WAPLES & HANGER
jhanger@wapleshanger.com

James S. Stephenson
STEPHENSON MOROW & SEMLER
jstephenson@stephlaw.com

Ian L. Stewart
STEPHENSON MOROW & SEMLER
istewart@stephlaw.com, istewa@hotmail.com

Richard A. Waples
WAPLES & HANGER
rwaples@wapleshanger.com, jalbrecht@wapleshanger.com